# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**BEATRICE HOPE BRODEUR,**

    **Plaintiff,**

v.                                                                 **Case No: 5:22-cv-384-PRL**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

___

## ORDER

Plaintiff appeals the administrative decision denying her application for Disability Insurance Benefits (DIB). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

On September 29, 2017, Plaintiff filed an application for a period of disability and DIB, alleging disability beginning October 11, 2013. (Tr. 214–21). The claim was denied initially and upon reconsideration. (Tr. 92, 109). At Plaintiff's request, a hearing was held on July 3, 2019, where both Plaintiff and an impartial vocational expert (VE) testified. (Tr. 38–78, 124–25). On September 26, 2019, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 15–30). Plaintiff's request for review was denied by the Appeals Council (Tr. 1–8, 1076–83), and Plaintiff appealed that decision to this Court. On May 18, 2021, the Commissioner filed an unopposed motion to remand the case for further proceedings. (Tr. 1050–52). On January 25, 2022, after remand from this

Court, the Appeals Council vacated the ALJ's September 26, 2019 decision and remanded the case for further administrative proceedings. (Tr. 1044–49).

After a second administrative hearing held on May 10, 2022, the ALJ issued an unfavorable decision on June 28, 2022, finding Plaintiff not disabled. (Tr. 976–1043). Plaintiff initiated this action on August 29, 2022. (Doc. 1). Plaintiff has exhausted her administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following medically determinable impairments: obesity (mild), fibromyalgia, degenerative disc disease of lumbar, thoracic, and cervical spines, restless leg syndrome, hypertension, posterior lumbar interbody fusion at L4-5, past cervical surgery, and lumbar spondylolisthesis. (Tr. 982).

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work. (Tr. 986). Based upon the RFC, and considering the testimony of the VE, the ALJ found that Plaintiff was capable of performing her past relevant work as a surgical technician. (Tr. 1003). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 1004).

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 C.F.R. § 404.1520(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff's sole argument on appeal is whether the ALJ failed to properly evaluate the opinion of treating physician, Amy Clunn, M.D. (Doc. 15).

As a preliminary matter, Plaintiff acknowledges that her claim is subject to a new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the

evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed her application in September 2017, thus the new rules apply to her claim.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. *See* 20 C.F.R. § 404.1513(a) (2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co- workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. at § 404.1513(a)(3).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 404.1520c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)-(5). An ALJ may but is not required to explain how he or she considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2).

Here, on June 19, 2019, more than two years after Plaintiff's date last insured of December 31, 2016,[1] Dr. Clunn provided statements during a deposition and completed a physical capacity evaluation on Plaintiff's behalf. (Tr. 930–41, 947–54). Dr. Clunn testified that she first treated Plaintiff on February 13, 2017, after Plaintiff was referred for multi-factorial pain complaints. (Tr. 935–36). She further testified that she had reviewed office notes dated January 24, 2017, from Plaintiff's treating physician, Barry Kaplan, M.D., and a December 22, 2016 MRI report. (Tr. 935). Dr. Clunn stated that Plaintiff "had major spine surgery on not just her neck but also her low back and so she ha[d] multiple body parts that [didn't] function well that [were] in constant, chronic pain which [was] distracting at the very least, caus[ing] some amount of depression." (Tr. 940–41). Dr. Clunn opined that as a result, Plaintiff had "constant, severe pain not managed well even despite two serious surgeries for her neck and her low back and trials of multiple medications and injections and therapies and . . . she [had] done everything reasonable to do to get her at her maximum function." (Tr. 941). In the physical capacity evaluation, Dr. Clunn opined, *inter alia*, that Plaintiff was limited to lifting and carrying no more than five pounds, could sit for six hours, stand for one

---

[1] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A) (2005)). Accordingly, Plaintiff had to prove that she became disabled on or before December 31, 2016, her date last insured.

hour, walk for one hour, and would need to alternate sitting and standing every hour in an eight-hour workday. (Tr. 951–52). Additionally, Plaintiff would need to take one to three fifteen-minute unscheduled breaks during a workday, and would miss four or more days a month as a result of her impairments or treatments. (Tr. 953).

The ALJ considered Dr. Clunn's opinions and found them "not persuasive." (Tr. 1000–01). The ALJ explained:

> On June 19, 2019, years after the date last insured of December 31, 2016, Amy Clunn, M.D. (Exhibit 43-F) provided statements in a deposition. However, her testimony established that she did not see the claimant prior to February of 2017. (Exhibit 43-F, page 6) As the claimant must establish that disability began on or before December 31, 2016, Dr. Clunn's testimony and treatment of the claimant does not establish the claimant's level of functioning by her date last insured. Her opinion is not supported by treatment notes on or before December 31, 2016. Nor is her opinion consistent with other evidence; no sources identified the same restrictions for the claimant on or before December 31, 2016. Dr. Clunn's opinion is not persuasive.

(Tr. 1000 – 01). Thus, the ALJ found that Dr. Clunn's testimony did not relate to the relevant time period. *See Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 825 (11th Cir. 2021) (finding that "the ALJ did not err in failing to assign weight to [medical] opinions" that did not "relate to the time period relevant for showing disability"). Nonetheless, the ALJ evaluated the persuasiveness of Dr. Clunn's opinions, finding them unsupported and inconsistent with the evidence prior to December 31, 2016, which the ALJ thoroughly discussed in her opinion. *See Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual

analyses at both steps three and five, ... we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.")).

For instance, the ALJ noted that in December 2013, Plaintiff underwent a "minimally invasive microsurgical posterior lumbar interbody fusion due to lumbar spondylolisthesis and lumbar radiculopathy[,]" and that in January 2014, "Dr. Kaplan indicated that [Plaintiff] had an excellent appearance" after her surgery. (Tr. 390–93, 389, 989). The ALJ noted that by April 2014, "Dr. Kaplan reported that [Plaintiff] was doing reasonably well . . . and was on an independent exercise program." (Tr. 387, 989, 994). Later that month, it was reported that Plaintiff "had been doing back exercises at home, . . . did not wish to have outpatient physical therapy[,] and . . . was doing extremely well postoperatively." (Tr. 386, 989, 994). The ALJ noted that "[o]n exam, [Plaintiff] walked without difficulty[,] . . . moved all her extremities and had normal 5/5 strength in lower extremities with intact sensation." (Tr. 386, 989, 994).

The ALJ acknowledged that in September and October 2014, treatment notes from treating physician Tara Connor, D.O., revealed that Plaintiff complained of low back pain, left shoulder injury, fatigue, spasms in her foot, weakness, and numbness. (Tr. 705–06, 990). However, the ALJ noted that on examination in October 2014, Plaintiff had normal 5/5 strength in upper and lower extremities, and although there was tenderness to palpation, pulses were equal and full. (Tr. 705, 990).

The ALJ next considered that in February 2015, despite Plaintiff's complaints of chronic muscle and joint pain, intermittent mild swelling in her hands, and restless leg syndrome, rheumatologist John Gresh, M.D., reported "unremarkable findings, including no cyanosis, clubbing or edema in extremities, intact peripheral pulses, a preserved range of motion of the cervical spine, intact range of motion of shoulders, elbows, wrists, hands (with

intact grip strength), intact range of motion of knees, ankles, and back with a functional hip range of motion." (Tr. 648–51, 994; *see also* Tr. 990). The ALJ acknowledged that "[t]here were fibromyalgia tender points at the occipital regions, low cervical region, anterior ICS#2, trapezius muscles, supraspinatus muscle insertions, gluteal regions, and greater trochanter bursae," but noted that there was "no tenderness of either medial knees or lateral epicondyle regions[,]" and that Plaintiff "had a normal gait[,] . . . pleasant affect[,] . . . [and] no focal weakness or sensory deficits." (Tr. 650, 990).

The ALJ considered Dr. Connor's treatment notes from 2015, noting that in February 2015, Plaintiff complained of daily pain, and in June 2015, she had "decreased range of motion of the cervical and lumbosacral spines." (Tr. 700, 702, 991). However, Plaintiff had no neurological deficits, and "subsequent examinations revealed an OK gait, and that [Plaintiff] moved all extremities well with no clubbing." (Tr. 698–99, 700, 991, 994).

Moreover, in April 2016, despite Plaintiff's complaints of joint, legs, and neck pain, Dr. Connor's treatment notes "revealed no clubbing, cyanosis or edema in extremities, intact sensation, normal motor strength in upper and lower extremities, that [Plaintiff] was well developed, well-nourished and in no acute distress, and had a regular heart rate and rhythm with no murmurs and clear lungs to auscultation." (Tr. 570, 572–73, 994).

Similarly, in July 2016, Dr. Connor "again observed that [Plaintiff] had no clubbing, cyanosis or edema in extremities, normal motor strength in upper and lower extremities, and a grossly intact gait[,]" while in November 2016, "Dr. Connor observed full range of motion of the neck with no cervical lymphadenopathy and that [Plaintiff] had a regular heart rate and rhythm with no murmurs, clear lungs to auscultation, no clubbing, cyanosis or edema in extremities, but normal motor strength in upper and lower extremities, and intact sensation."

(Tr. 562–63, 566–67, 994–95; *see also* 992–93). And in December 2016, Dr. Connor observed that Plaintiff "was well developed, well-nourished and in no acute distress" and had "full range of motion of the neck with no cervical lymphadenopathy, clear lungs to auscultation, cervical, thoracic and lumbar tenderness on palpation, with no clubbing, cyanosis or edema in extremities, normal deep tendon reflexes (2+), and a normal gait, with decreased strength in the right upper extremity." (Tr. 557–58, 993; *see also* Tr. 995).

In sum, the ALJ conducted a thorough, longitudinal review of the evidence, and her evaluation of the persuasiveness of Dr. Clunn's opinion is supported by substantial evidence.

Plaintiff challenges the ALJ's analysis of the supportability factor arguing that "the ALJ overlooked the fact that Dr. Clunn testified she reviewed Dr. Kaplan's treatment note dated January 24, 2017, and [Plaintiff's] MRI report dated December 22, 2016, at her first appointment on February 13, 2017[,]" and therefore "was able to provide a retrospective opinion based on these records." (Doc. 15, pp. 7–8). However, the ALJ considered the December 2016 thoracic spine MRI, noting that it "revealed central disc herniations, and disc protrusions with no central canal stenosis." (Tr. 993). And while the ALJ did not address Dr. Kaplan's January 24, 2017 treatment note presumably as it was outside the relevant time period, the ALJ found Dr. Clunn's opinion unsupported after reviewing all of the evidence from the relevant period. Moreover, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citation omitted). And here, Plaintiff has not met that burden.

Plaintiff also challenges the ALJ's analysis of the consistency factor, arguing that "[t]he ALJ overlooked the fact that at the deposition, [Plaintiff's] representative provided Dr. Clunn with a copy of a document from Dr. Connor that placed a five-pound lifting restriction on her due to her pain." (Doc. 15, p. 8). Plaintiff argues that "[c]ontrary to the ALJ's finding, Dr. Clunn's opinion was consistent with Dr. Connor's opinion." (*Id.*)

However, the ALJ considered Dr. Connor's November 14, 2016 opinion restricting Plaintiff to lifting no more than five pounds, and found it "not persuasive." (Tr. 697, 1001). And Plaintiff does not challenge the ALJ's assessment of Dr. Connor's opinion. Once again, Plaintiff identifies evidence that she believes compels a contrary finding. The Court finds this argument unpersuasive for the same reason as her argument challenging the ALJ's evaluation of the supportability factor. *See Sims*, 706 F. App'x at 604; *see also Allen-Bond v. Comm'r of Soc. Sec.*, No. 6:17-cv-846-ORL-DCI, 2018 WL 4360619, at *4 (M.D. Fla. Sept. 13, 2018) (finding that "citation to evidence that Claimant believes is consistent" with a doctor's opinion was unpersuasive because "[t]he only issue is whether there is substantial evidence to support the ALJ's decision," and "[t]he Court will not reweigh the evidence").

Plaintiff, in essence, is really asking the Court to reweigh the evidence, which is not within the province of this Court. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (quotation omitted). Accordingly, Plaintiff has failed to show that the ALJ erred in evaluating Dr. Clunn's opinion.

## IV. CONCLUSION

For the reasons stated above, the ALJ'S decision is AFFIRMED under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on August 10, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties